This morning is 073050 Chambers v. the Department of the Interior. Mr. Condon. Good morning. May it please the Court. Petitioner Theresa Chambers has raised a number of issues in this appeal. This morning I will focus my remarks on two particularly significant issues in the appeal. The first is whether Chief Chambers is protected by the Whistleblower Protection Act. The record reflects, and there is not much dispute on this, that Chief Chambers disclosed to the Washington Post concerns about declining safety in the parks and the parkways. If she had said, we're not doing enough to protect our parks, would that be a protected disclosure? Yes, it would. How is that different from the example in the Senate report, which all parties have cited, where the Senate report for the statute cites two extremes, one in and one out, and the one they say is out is general criticism by an employee of the EPA that the agency is not doing enough to protect the environment. It's not protected. Well, Your Honor, I would clarify by saying it is protected in the context of the other statements that Chief Chambers made. She didn't just make a general statement. She made a number of specific statements. No, but my question, let me ask you my question again. If what and all she had said was, we are not doing enough to protect our parks, would that be a protected disclosure? By itself, that would not be enough. What if she had said, we are not doing enough to protect our parks in the Washington, D.C. metropolitan area, and therefore they are very dangerous. Would that be enough? That gets closer, but I would say it's borderline. What if she had said, we are not doing enough to protect our parks in the Washington, D.C. area, and therefore we need to increase our staff tenfold. Is that enough? I believe it is, Your Honor. Okay, so what did she say that was enough that puts it in the protection rather than out? She says it's just dangerous. You said not in. She said to the Post, as reflected in the record, that there were less officers available to patrol the parks and the parkways, that there was not enough in general to go around, that they were having to work extra shifts and up to 12 hours a day, and that she demonstrated and that there were statistics that indicated that both traffic accidents and arrests were being affected by the fact that there were not sufficient officers to patrol the parks and the parkways. So she was very specific as to both the type of concern and what the results of that concern yielded. So if someone from the Homeland Security Department says there are not enough people to screen at our airports and we need more people to do that, that's a protected disclosure? I would say it is protected if, in fact, there is some demonstration and indication that what they've disclosed is yielding a security risk of some kind. So in other words, if they could also show, well, because we don't have enough people, when we are tested, people are getting through that shouldn't get through, if there was some other information, as was in this case. What was the other information? The other information in this case is that the statistics showed that there were far more accidents on the parkways than had been in previous years, and that, in fact, there was also a decline in arrests in the parks where there had been previously dangerous criminal activity that had occurred year after year. So they expected that they would have a certain number of arrests that they would have to engage in these particular parks, and those had declined significantly, I think like 11% or so, as a result of the change in staffing. So anyone who works in law enforcement is in a context in which they're going to say there's inadequate staffing and therefore it presents a danger. What makes it specific and substantial enough? Well, what makes it specific and substantial enough is if they tie the danger to some information that indicates that that danger is likely to occur or has occurred. And in this case, what we have is... Because there are more accidents on the parkway? Yes, ma'am. That's sufficient specificity to show that there's a danger? It's sufficient specificity in the context... Let's assume that for the past 50 years, statistics can show that there's an increase in crime in D.C. parks and on the B.W. Parkway. So that's always going to be the case.  Right, but the key here is that the statistics show that there's an increase over other years once the change in personnel occurred. Once the change in staffing occurred, the increase in accidents on the parkway were several fold beyond what it had been in previous years. In fact, in years combined. The most specific part of this is the Baltimore-Washington Parkway, right? Yes. And she's specific in one sense, and she says that the patrols have been halved, right? Yes. And she says that's led to an increase. Correct. Did she say that? I mean, is it clear that that's her statement in the Washington Post article? Because the paragraph there starts off, police point to several statistics to show the impact of the cutbacks on the B.W. Parkway, blah, blah, blah. What the record reflects is that she was asked about those statistics and confirmed them in the interview she was having with the Post. But isn't there some stuff that she said she didn't say, that there was some dispute, and she was claiming in connection with the other piece of this case, which is the misconduct, that she did not cite the specifics? She is claiming, yes, Your Honor, that she did not make the specific statement attributed to her about the budget numbers. Oh, okay. But not about the issue of the substantial, specific dangers having to do with the reduction in staffing for the parks and the parkways. And in particular, for the halving of the number of patrols on the parkways? Yes. She said that she told them that the patrols had been halved from four to two, is that right? That's right. And that there would often be only two, as opposed to four. And the problem with that, as she expressed to the congressional staffer in her email, was that if you have a situation that requires an arrest, you only have two officers in the area, both officers need to attend to the arrest, you then have no one available for any other incidents or calls. And that becomes a problem in a very populated area, such as the Baltimore-Washington Parkway, where there are many, you know, much traveling and much going on. So that was the issue. And these are historical statistics? Sorry? These are historical statistics she was giving, not after her statements. I mean, the papers we have here do we show that there was a significant jump after she made her statements? Not after she made her statements. The statistics, I believe, were demonstrating that since the changes had taken place in the staffing, this is what they were seeing in the way of increased traffic incidents and declining arrests. And none of this was public information? The number of incidents must be public information. The amount of the total in the previous years, that must already have been on the record, right? Like many things in the government, it is probably public information of some sort, but whether the public becomes aware of it and whether people are able to take notice of it and take action on it and complain about it or be concerned about it is quite another thing. There's a lot of information available, I think Your Honor would agree, but when information is presented by a law enforcement official of the stature of Chief Chambers with 27 years of policing experience, 6 years of chief of police experience, the information takes on a different context, I think you would agree. So you're saying if the Post reports the increase in crime and reports the statistics yesterday and then today the Chief repeats the statistics, that that is protected whistleblower activity? Just by the fact that some individual chooses to announce them even though they've been in the public domain? Well, I think it depends on the context. I don't know that the example that you're giving would necessarily result in protected activity because it might be too general and the statistics might not be closely tied enough. There might not be an actual revelation of new information. That is not the case here, though. The case here is the information that the Chief was relaying both to the congressional staffer and to the Post was information that was not generally available and was not generally known. Is there any claim by the government that this information was generally known and that she wasn't making a disclosure? I'm not aware that they've made a factual argument in that regard. But that is why... It was not generally known, but it was generally available. I'm sorry? It was not generally known, but it was generally available. I do not know if it was generally available, to be honest with you, and the record I don't think reflects that one way or the other. And what's the law on that? The law on? On whether you're disclosing what the nature of the information has to be, if you're disclosing information in the public domain, if you're disclosing information that's easily available versus not. Well, I think the only thing the law requires, if we focus on 2302 BAA, what the law requires is that there's a reasonable belief that the issues being raised are evidence of substantial and specific danger to public health and safety. But in Huffman, we said that in order to be a disclosure under the statute, it had to be something that wasn't already known, right? You did say that, and you said that in the context of someone who did auditing and investigating kind of functions. In this instance, Huffman does not cover the instance that we're dealing with here. So if somebody had taken a Washington Post article and made a disclosure to the New York Times that was identical to the one that was made the day before to the Washington Post, that wouldn't be a disclosure within the meaning of the statute, right? No. But that's, of course, not the case that we have here. The case that we have here is information that's being revealed that's not generally available. It's being revealed by the top-level official in the Park Police. Doesn't someone keep statistics on the number of traffic accidents on certain roads? I mean, isn't that available to me? I mean, what she disclosed was there were – I mean, the specificity of a disclosure is 706 traffic accidents from one period to another. Wouldn't that be available? It might be available, but it's certainly not disclosed publicly and not readily and certainly not by an official of chief chamber stature that would emphasize what the significance of that information is. Well, what you're saying is that the number of accidents was known. That's not a disclosure that she made. But tying the number of accidents to the having of the patrols was something that was not covered. Correct. If you take the statistics and overlay it with the differential in the staffing, that's the significance of the information. That's where you learn that there's something going on here that requires people's attention. People need to know when they're traveling on the Baltimore-Washington Parkway if they come into an accident or if they have issues that they might have someone that they can call upon and get assistance. If they don't know that, then the parkway is going to be a much less safe place than it would have been otherwise. And so what if she had said on the BW Parkway where patrols have been halved, and that's because people in Congress made a decision that we should put this money elsewhere or they cut our budget or our budget isn't significant enough. And there was long debate between it and people debated whether we should spend the money here or there. Why doesn't that become nothing more than a policy disagreement? As you framed it, if that was the discussion that was going on, that might be nothing more than a policy debate, but that's not the case here. How do we know that? We know that that's not the case here because the information of record… Either they're not enough patrolmen, either because the overall budget is not enough or insufficient, or because they've allocated the resources to another place, right? Right. Well, and that doesn't make it…the disclosures that the Chief is making are of the nature protected by the statute. It's not of the nature of a policy debate. She did not say that she was debating the policy. In fact, she was carrying out the policy. What she was responding to were questions about, well, what does this mean for people on the street and people in the parks? Well, but there's no general…we haven't held that labeling something as a policy debate means that it can't be a disclosure under the WPA, right? No, that's correct. But it's harder. There's some… The standard is tougher. Well, there's some policy debates that are within the WPA and there's some that are not. That is correct. I agree on that. Let me turn your attention for a moment to the other issue that I wanted to address, which was the due process question. And that is whether or not Chief Chambers received appropriate pre-termination due process. And what I think the court needs to focus on very specifically is the nature of the ex parte communications and the significance of those communications that were not revealed to Chief Chambers in advance of the termination decision. The series of events that took place is that when Chief Chambers was proposed to be removed on December the 17th in 2003, she filed a detailed response with significant documentation in January 9th of 2004 and learned after she was terminated, which wasn't until July of 2004, that a significant series of depositions and other information had been collected that the decision maker relied upon. And the AJ found that none of that was new or material. The AJ said that. The AJ did not describe what she looked at or indicated that she did look at anything in detail to come to that conclusion. And I would suggest, Your Honor, that once that information is reviewed in detail, one can easily discern that the information there was not simply cumulative, was not simply information that did not make a difference to the analysis of the Chief and her advocates at the time, but would have made a substantial difference in how she responded to the proposed removal, and is completely contrary to discourse holding in stone. And what's our review of that? Your review of that would be de novo. It's an issue of law, Your Honor. Your time has expired. We'll give you, sir, your rebuttal time back. Thank you. You're in the government now. Mr. Stern? Good morning, Your Honor. If you need a little extra time, you may have it. Thank you, Your Honor. May it please the Court, this is clearly a case of a bad fit between an employee and a physician. Within a little over a year after her hire, Ms. Chambers was reprimanded for misusing government data. The basis for the Board's decision here is that the health and safety provision of WPA is inapplicable. And that the charges were sustained, of course. Yes, inapplicable because the employee has to show that the health and safety risk that was raised was something that was not debatable among ordinary people, right? Not exactly. Not exactly? No. The Board's opinion says very forthrightly on the appendix, page 31, that Ms. Chambers did not disclose a substantial and specific danger. When analyzing comments that are made at a certain point, and then retroactively we have to look at those comments and see if they fit into one of the categories that's covered by the whistleblower protection act. I don't understand. Look at paragraph 22 on that page. It says, rather under white, a statement of particular policy choice raises a risk to the citizenry, is protected only if the desirability of the tradeoff that the policy choice represents is not debatable among ordinary people. And then the Board goes on to say this one wasn't debatable. Right. Because when comments amount to a policy disagreement, the white analysis comes into play. But what the Board also did, and I direct the Court's attention to paragraph 24 on that same page, the last sentence of that paragraph. The Board specifically says, in the present case, the appellant has not shown that she disclosed a substantial and specific danger to public health or safety within the meaning of 5 U.S.C. 2302. I understand what you're saying, but wait. Stick with the first paragraph. Yes. The Board is saying that it has to be something that is not debatable. There may be an alternative ground on the substantial or specific, but at least part of the ground here for the Board is that it has to be non-debatable, right? I think what the Board was doing, with all due respect, the Board had to look at not just the substantial and specific harm, because Ms. Chambers had alleged that her disclosures fit into several of the categories of the misalerted check. You seem to be having difficulty defending that aspect of the Board's decision. Do you agree that the Board was wrong about that?  I agree that the Board analyzed her comments to see if they constituted either gross mismanagement or waste of funds or substantial and specific harm. They specifically found they did not constitute a substantial and specific danger to public safety. Let me ask the question another way, because I'm having some of the same difficulty with the Board decision that I think Judge Dyke may be having. Is it the government's position that there's a separate category of disclosures? The protection goes to substantial and specific danger, and that's separate and distinct from gross mismanagement? Yes. That there's a separate category? Those are separate categories. Okay. I'm sorry. No. So those are separate categories. So if you meet the test that you disclose a substantial and specific danger, that's the beginning and that's the end of the inquiry. That's right. Okay. We're beyond the one sentence you've repeatedly shown us that the Board said in paragraph 24. Where is their analysis? Where is their application of that standard to the facts in this case? Well, it's basically that entire paragraph, because that's also the same paragraph where they discuss. . . Well, we're in this paragraph. . . Okay, we're in this paragraph. . . Actually, that's paragraph 24. Does it say anything about the facts of this case in paragraph 24?  There's not one. Because they have previously discussed the facts of this case. In paragraph 24, they discuss the Board's decision in Braga, and they are comparing it to this case. Their conclusion is that this case does not present the kind of substantial and specific harm that was identified in Braga. Having said that, when you look at comments that may or may not have been made at the time they were made, the purpose at that time may or may not have been to blow the whistles on some government wrongdoing. But after the fact, if an employee comes forward, as Ms. Chambers did, and said, You know those remarks that I made? I was blowing the whistle. The Board is as obligated to analyze those remarks in the context of her claim. But it didn't analyze them in this connection, on the substantial and specific. As Judge Prost points out, there is no analysis, right? Well, again, I mean, possibly they could have written it differently, but they did go over the facts of what she said. They did have a paragraph discussing Braga, which is substantial. But it's never tied into the substantial or specific. There's no analysis of the post-article or the email to Weatherly that tells us why they have found that it's not substantial and specific, right? Well, I would have to say that it's scattered throughout their discussion of the facts, and then they come to the conclusion where they discuss in paragraph 24 the Braga case and they come to the conclusion. Is there any other place in the opinion where the language substantial or specific is used? I don't think so. I don't want to say for sure because I think they may have referred to it in other paragraphs. Well, it is, and let me tell you that sentence. The only one I could find where it's referred to again is at the end of 25 where it says the personal opinions, blah, blah, blah, regarding the funding levels and priorities set by policymakers are quite different from the substantial and specific dangers. So in the other time when they cite it, they seem again to be conflating the two standards, which is the difficulty here. Right. I understand, and I see that, and I think that what it is is that when the board looks at these remarks, and again, at the time they were made, they may or may not have been made with the intent to blow the whistle. What the board has to do is to place them in context, and there's a continuum. Remarks that you're looking at retroactively may fall more toward a policy dispute, and the more they actually meet the description of what is in essence a policy dispute, the less likely they are to meet one of the standards set forth in the Whistleblower Protection Act, such as gross mismanagement or substantial and specific safety. I think that's what this Court said in White. It said if these remarks in essence are in context… a separate requirement. So if you're able to prove something, you've disclosed a substantial and specific danger. End of story. Do we then analyze that as to whether or not there was a policy dispute regarding that danger? No, but what I'm trying to say, Your Honor, they are, it is a separate category, but what I'm trying to say is that when the board has to analyze these comments, it can't do it in a vacuum. It has to look at the entire context, and in this context, where we know that there were policy discussions and disagreements, the administration, Congress, had decided the Park Police was going to devote its resources to protecting the icons. This was a management and was… Yeah, but you're describing that as a level of generality that seeks to bring it within the legislative history. There are general criticisms in here, but there are also specific points, particularly the one about the BWI Parkway. Well, that's about the only specific point I think that could be said she made, but again… Well, why is that? Let's focus on that particular point about the halving of the patrols on the BWI Parkway.  Because all that she really said was there have been less officers on the Parkway, there have been more accidents. There's really no evidence, and it is her burden to show that she made a disclosure that the increase in accidents is directly due to the fewer Park Police. The Congress and the administration had said that they wanted… She said it was due to that, didn't she? There was no evidence of that. The Congress had intended for the Park Police… The question is reasonable belief. Are you saying that she didn't show a reasonable belief? No, because after all, what the Congress and the administration had said was for the Park Police to devote their resources away from traffic management and to let that be picked up by the local police patrol, state troopers and other police patrols. I don't understand this. Why is the disclosure about the halving of the patrols an expression of concern that this has led to more accidents? Why isn't that substantial and specific? The point of the Whistleblower Protection Act is to bring to light government wrongdoing. No, just answer my question. Why is that not substantial and specific? Because she's not specifically saying if you don't have a police officer there, then an accident is going to result. You mean she has to point to the possibility of a particular accident? Well, that's what happened in Braga. In Braga, the claim was this particular piece of equipment that was made for this particular purpose is not going to work. Death is going to result. Just saying if we have less resources, there's less coverage, that is similar to the kind of statement that Congress said, for example, in the EPA example that they gave in the legislative history, was not enough. Yes, an employee can always say more resources devoted to a certain thing would do a better job of protecting. So what she has to say is that at the intersection, the Columbia exit of the BWI Parkway, there are going to be more accidents because of the halving of the patrols. Right. That is similar to saying... Would that be substantial and specific? No. It would be similar to saying more resources devoted to the environment would better protect the environment. More, you know, 30 police officers was better than 20. 50 police officers is better than 30. More resources devoted to the BWI Parkway will likely result in less accidents. That's not the kind of substantial and specific danger that the whistleblower protection act was intended to protect against. I think I understand your position about that. I want you to come back to this discussion in the board's opinion about the thing having to be non-debatable. Do you agree that if the board, if we read the board's opinion as applying the non-debatable standard to the substantial and specific danger, that that is wrong? Yes. I would say that is wrong because it is enough under the act to demonstrate a substantial and specific danger. I don't believe that's what the board did, but if the court reads the board's opinion that way, then that would be wrong. The case still would then go on to the other two elements of the whistleblower protection claim, which is contributing factor and clear and convincing evidence. And, of course, in this case, the board found that the agency demonstrated by clear and convincing evidence that it would have taken these actions anyway. The board found that? I thought the A.J. found that. The A.J. did, but the board endorsed that. Where did they endorse that? The board found no error in any of the other judgments that the administrative judge made. So the only way is that they modified the administrative judge's opinion was in the aspects that they specifically articulated. But they didn't address it specifically? They did not address it specifically, no, Your Honor. Well, with my limited time remaining then, I guess I will just address the other point that was raised by Ms. Chambers' counsel, which goes to the due process. And she was arguing that the ex parte communications that took place in this instance when the deciding official was investigating the charges against Ms. Chambers were wrong. Ms. Chambers' argument fundamentally misunderstands the process of pre-termination procedures. All that is required by pre-termination procedures is notice of the charges and an opportunity to respond. It's not intended to be, and the Supreme Court has not held that it must be, some kind of a full-blown adversarial process. In this case, Ms. Chambers did have notice of the charges in a very comprehensive statement of the charges against her. The administrative judge looked at the contents of the investigation, the ex parte contacts, all of which were introduced into the record below, and found that none of them introduced anything in the nature of new charges to which Ms. Chambers did not have an opportunity to respond. And the Court's standard of review of that finding is substantial evidence. On appeal, Ms. Chambers has failed to identify specifically any aspect of those ex parte communications below where the Board came to the wrong conclusion. Of course, the other main aspect of this case, and one that the Petitioner had devoted a great deal of her brief to, was the charges themselves. This, of course, is a substantial evidence question, and there is clearly adequate evidence in the record below to support the Board's opinion to sustain those charges. There were several other errors that were raised by the Petitioner, but unless the Court has questions about those or has further questions about the Whistleblower Protection Act, then we would urge this Court to affirm the decision of the Board. Thank you. Okay. Thank you. Mr. Kondat. Mr. Kondat, focusing on the statement in the Washington Post article that we've been focusing on, the B.W. Parkway statement. Yes. If the statement was on the B.W. Parkway, there have been fewer patrols and there's been an increase in traffic accidents. Would that be a protective disclosure? Yes. If there were statistics to show that during the time of the decreased patrols, that's… Wait a minute. Statistics to show in the background? We're talking about what she disclosed. Yes. If the disclosure was not patrols have been halved. Patrols have been caught and there's been an increase in accidents. That was all that she said. Would that be a protective disclosure? Yes, I believe it would. I believe it would be substantial and specific. Okay. With respect to some of the comments made by government counsel, I'd like to address a few items. First, the reference by counsel to the comparison of, well, if you have more resources for anything, you could say it's going to be better or whatever. That's not what's being said here. Certainly, there was a concern about resources, but it was not the debate about resources that Chief Chambers was disclosing with respect to the Washington Post piece or with respect to her communication to the congressional staff. It wasn't? It was not. It wasn't about the problem with the sufficient resources? It was an expression of concern about the fact that the staffing differentials were making a significant difference in the ability to protect public safety. And that was the concern she was relaying. Is there a difference between resources and staffing differentials? No. Well, staffing differential is part of the overall umbrella of resources, but it's a more specific discussion. It's not a general discussion the way the government describes it of, well, if you just have more resources. This is not the EPA example that you raised earlier where if we just had some more money or something like that, we could better protect the environment. That's not what's happening in this case. So it's rather if we spent our resources this way rather than that way? No. What the Chief is disclosing is that because of the implementation of the changes in staffing, we have certain results which have created a substantial and specific impact on public health and safety. And what I would emphasize in my closing moments to the Court is that the importance of sustaining Chief Chambers in this matter applies not just to her, but applies to law enforcement, public safety, other kinds of people across the country. It's very important that they feel protected, that they can come forward and raise concerns that would help protect all of us or federal workers wherever they may be. And I think that's one of the very important points that the Court should consider as it's evaluating the case. Thank you. Thank you. Case is submitted.